iterim Decision #2035

MATTER OF METHURE

In Deportation Proceedings

A-18160358

*Decided by Board March 20, 1970*

Deportability under section 241(a)(9) of the Immigration and Nationality Act is established by clear, convincing, and unequivocal evidence obtained pursuant to lawful interrogation and arrest where respondent, who was initially interrogated by a Service officer inside a Service vehicle, and who, after leaving the car and while not under arrest, voluntarily admitted working illegally, after which he was taken to the Immigration office, where he was advised of his rights under the *Miranda* rule, and was sworn upon an affidavit in which he admitted he had violated his immigration status as a student by engaging in employment.

CHARGE:

Order: Act of 1952—Section 241(a)(9) [8 U.S.C. 1251(a)(9)]—Nonimmigrant—failed to comply with conditions of status.

ON BEHALF OF RESPONDENT:
Martin A. Shlufman, Esquire
515 Madison Avenue
New York, New York 10022

Counsel of record:
Leon Wildes, Esquire
515 Madison Avenue
New York, New York 10022

ON BEHALF OF SERVICE:
Irving A. Appleman
Appellate Trial Attorney

Allan A. Shader
Trial Attorney
(Brief filed)

The respondent, a native and citizen of Guyana, has been found deportable under section 241(a)(9) of the Immigration and Nationality Act as an alien who, after entry as a nonimmigrant student on February 13, 1969 under section 101(a)(15) of the said Act, failed to comply with the conditions of his nonimmigrant status. An order entered by the special inquiry officer on April 28, 1969 grants the respondent the privilege of voluntary departure in lieu of deportation with an alternate order providing for his deportation to Guyana if he fails to depart voluntarily when and as required. The respondent on appeal maintains that

the evidence establishing his deportability was obtained by an unlawful search and seizure.

The respondent, after remaining mute for a major portion of the hearing, finally conceded that he was deportable as charged in the order to show cause (pp. 46 and 57). Our discussion of the facts will be limited to the respondent's claim that the evidence establishing deportability was obtained by means of an unlawful search and seizure.

The arresting officer, Joseph P. Lloyd, testified that he had received an anonymous phone call informing him that a number of aliens were illegally employed by the Randall Plastics Company located on 46th Road in Long Island City, New York (p. 19). Between the hours of 7:30 a.m. and 8:30 a.m. on April 9, 1969, while seated in an automobile parked in front of the Randall Plastics Company, he observed the respondent walking on the sidewalk. He got out of his car, identified himself to the respondent as an immigration officer, and questioned him regarding alienage and whether he had anything on his person to establish his right to be in the United States. The respondent informed Officer Lloyd that he was an alien; that his passport was at home; and that he was on his way to school (pp. 12 and 13). At this point, Officer Lloyd invited the respondent to get into his parked car "to show me whatever type of identification he might have on his person" (p. 13).

Officer Lloyd further testified that after the respondent entered his car, he (respondent) pulled a "little notebook" from his coat pocket which contained a notation that the respondent "had started working after arriving in the country" (pp. 13 and 21). When questioned by Officer Lloyd regarding the notation, the respondent replied that he had not been working (p. 32). Thereafter, several aliens were brought to the car. They had just been taken into custody by another Service officer while working in the Randall Plant. None of them could identify the respondent as a fellow employee (p. 32). Officer Lloyd testified that at this point, it was decided that they did not have enough evidence to hold the respondent; and that " . . . I called him out of the car, and I walked away for about six feet or so in back of the car, and he was behind me and as I turned to approach him he made a statement to me . . . he said he was working" (p. 36). The respondent was then returned to the car and taken to the Immigration Office. There he was advised of his rights under *Miranda v. Arizona,* 384 U.S. 436 (1966), and was sworn upon an affidavit in which

he admitted that he had violated his immigration status as a student by engaging in employment.

Originally, counsel for the respondent informed the special inquiry officer that the respondent would not testify pursuant to the privilege contained in the Fifth Amendment to the Constitution (pp. 3 and 24). Following denial of counsel's motion to suppress the affidavit, entered as Exhibit 3, counsel waived the privilege and placed the respondent on the witness stand (p. 43). The respondent's testimony with regard to the sequence of events leading up to his arrest varies in some matters from the testimony of Officer Lloyd. He testified that Officer Lloyd told him to get into the car and stated, "you will have to make a statement"; that after he got into the car, Officer Lloyd "searched me in my pocket . . . put his hand in my coat pocket, pull out my pen, my pencil; put his hand in the coat pocket and pull out the diary . . . he read the diary . . . and find that there is a date marked started to work . . . then he said I will have to give him a statement" (pp. 47 and 48). The respondent further testified that Officer Lloyd "handcuffed me to the car" while he rounded up some more aliens (p. 49).

The respondent's testimony concerning the events leading up to his arrest continues:

Then after rounding up these other guys they took us along to another corner [of] the street so that the other guys could get their passports. Then he call me over to him. He come up to the car a few feet back of the car. He call me over and he say that I will have to tell him the truth and he ask me where I was working. That if I didn't tell him that he will lock me up and I was scared of—I was so afraid that well I told him that yes I was working. (p. 49)

The respondent was then questioned as to whether at any time during the aforementioned events he was informed that he had a right to remain silent and that anything he said could be used against him. He replied, "No sir" (p. 50). It is the respondent's testimony that Officer Lloyd "put me back in the car" after he admitted that he was employed and took him to the Immigration Office where he made the statement entered as Exhibit 3. The respondent acknowledged his signature on Exhibit 2 (Form I-214), which is the usual statement informing an alien of his rights, and his signature on Exhibit 3, which is the affidavit (p. 52). The respondent further testified that he did not read the affidavit although there are initials showing that he made corrections on it. The respondent at first denied that the statement concerning the place of his employment was true (p. 54). He later admitted the fifth allegation contained in the order to show cause

insofar as it relates to gainful employment in the United States in violation of his nonimmigrant status. He also admitted deportability (p. 57).

Counsel on appeal urges reversible error. He argues that the respondent was found deportable solely on the basis of an admission which was obtained by an unlawful arrest without probable cause. He maintains that the admission is not admissible in evidence because:

(1) The respondent was not warned of his constitutional rights in accordance with *Miranda* v. *Arizona*, 384 U.S. 436 (1966), when first subjected to interrogation after his arrest.

(2) The incriminating statement was the fruit of an illegal search without probable cause at the time the immigration officer invited the respondent into his car.

Section 287 of the Immigration and Nationality Act provides in pertinent part that any officer of the Immigration and Naturalization Service:

. . . shall have power without warrant—(1) to interrogate any alien or person believed to be an alien as to his right to be or to remain in the United States.

This statute, plain on its face, gave the immigration officer authority to approach the respondent on the street in front of the Randall Company and invite him into his car for the purpose of interrogating him as to his right to be in the United States. Furthermore, since the immigration officer had been informed that aliens from Guyana were unlawfully employed by the Randall Company, it was reasonable for him to believe that the respondent might be one of those aliens. A suspicion of alienage can be a reasonable one if no more appears than that the person approached is in an area in which illegal aliens have been reported. Cf. *Amaya* v. *United States*, 247 F.2d 947 (9 Cir., 1957), cert. denied 355 U.S. 916; *Matter of Au, Yim and Lam*, Interim Decision No. 1981, and cases cited (BIA, 1969). At the time of the immigration officer's initial approach, the respondent admitted that he was from Guyana.

It is the respondent's contention that his initial arrest was effected at the time he entered the immigration officer's car or at least when, according to the respondent's testimony, his liberty of movement was constrained by the use of handcuffs. While it is true that the immigration officer testified that he probably would have restrained the respondent if he had attempted to leave the car prior to the completion of his interrogation (p. 17), there is no convincing evidence that the respondent was under the impression that he had been arrested at the time he entered the immi-

gration officer's car. There can be no seizure where the subject is unaware that he is "seized," *Yam Sang Kwai* v. *INS*, 411 F.2d 683, 686 (D.C. Cir. 1969), cert. denied 396 U.S. 877.

There is no support in the record for the respondent's testimony that "they handcuffed me to the car" (p. 49) in order to restrain him while the immigration officer assisted in the round-up of additional aliens. There is no testimony by Officer Lloyd concerning the use of handcuffs while the respondent was seated in his car. We note that counsel did not raise this issue when he cross-examined Officer Lloyd. In fact when the respondent was questioned as to "when did you get out of the car," he replied that the immigration officer ". . . asked me to come over" (p. 50). There is no testimony by the respondent that there had to be a release of handcuffs before he could leave the car (pp. 49 and 50). Accordingly, we find no substance to counsel's claim that the respondent's initial interrogation while seated in Officer Lloyd's car amounted to an unlawful arrest.

We next turn to counsel's claim that the incriminating statement was the fruit of an illegal search. There is conflicting evidence as to whether the diary which contained a notation that the respondent was gainfully employed was given voluntarily to Officer Lloyd by the respondent or whether it came into the possession of the immigration officer by a search of the respondent's person after he entered the officer's car. Regardless of how the diary came into the possession of Officer Lloyd, the affidavit in question (Ex. 3) was the fruit of the respondent's admission after the immigration officer had reached the conclusion that there was insufficient evidence to prefer charges against the respondent, and was about to inform him that he was free to go (p. 31). Even assuming some infirmity in the petitioner's arrest without a warrant which might taint any document seized from him, a deportation order will not be set aside when there is ample competent evidence, as in this case, which, standing alone, will support the order, *Shing Hang Tsui* v. *INS*, 389 F.2d 994, 995 (7 Cir., 1968) ; *Valeros* v. *INS*, 387 F.2d 921 (7 Cir., 1967).

It is the contention of counsel that the incriminating statement entered as Exhibit 3 was tainted by the earlier admission of the respondent which he alleges was obtained without warning the respondent of his rights under the *Miranda* rule (*supra*). He also argues that the respondent did not waive his constitutional rights knowingly and intelligently. There was no "custodial interrogation" of the respondent at the time he voluntarily admitted that he was employed, following his exit from the car of Officer Lloyd.

Under the circumstances, the rule in *Miranda* does not apply to the voluntary statement of the respondent which he made prior to his arrival at the immigration office. Officer Lloyd acted within his statutory authority in transporting the respondent to the immigration office for he is enabled "to arrest any alien in the United States, if he has reason to believe that the alien so arrested is in the United States in violation of . . . law . . . and is likely to escape before a warrant can be obtained . . ." (8 U.S.C. 1357 (a) (2)). Furthermore, we find no substance to counsel's claim that the respondent did not intelligently and knowingly waive his rights under *Miranda*. There is a certification in the record signed by Officer Lloyd and another witness that the warning and waiver were read to the respondent, who also read it and affixed his signature thereto in their presence. Exhibit 3 contains a similar warning which was executed by the respondent. There is ample evidence in the record that the respondent speaks and understands the English language (p. 3). We find no support in the record for the respondent's testimony that he did not understand what he was signing when he waived his rights under *Miranda* (p. 51).

We affirm the finding of the special inquiry officer that the facts of record establish that the respondent was lawfully interrogated and arrested by the immigration authorities and that he has, in fact, violated his status as a student in the United States by accepting full-time employment. We conclude that the deportability of the respondent has been established by clear, convincing and unequivocal evidence.

We affirm the grant of voluntary departure in lieu of deportation and will dismiss the appeal. Since the execution of the order has been stayed during the pendency of this appeal, we will provide for the voluntary departure of the respondent within 30 days from the date of this decision.

**ORDER:** It is ordered that the appeal be and the same is hereby dismissed.

*It is further ordered* that, pursuant to the special inquiry officer's order, the respondent be permitted to depart from the United States voluntarily within 30 days from the date of this decision or any extension beyond that date as may be granted by the District Director; and that, in the event of failure so to depart, the respondent shall be deported as provided in the order entered by the special inquiry officer.